**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS**

**FORT WORTH DIVISION**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR - 5 2022

CLERK, U.S. DISTRICT COURT
By_____ 10:20am
Deputy

_____**District Court**

| | |
|---|---|
| Mr. Michael Moates, MA, QBA, LBA, | Case No.: **4 - 22 CV - 262 - P** |
| Plaintiff | |
| v. | **JURY TRIAL DEMANDED** |
| Michael Arismendez, in his capacity as Executive Director of the Texas Department of Licensing and Regulation; | |
| Texas Department of Licensing and Regulation; and | |
| Behavior Analyst Certification Board; | |

# <u>ORGINIAL PETITON</u>

- 1 -

**TO THE HONORABLE JUDGE OF SAID COURT:**

Come Now, Michael Moates, MA, QBA, LBA (Collectively Plaintiff) bring this cause against the Michael Arismendez, Texas Department of Licensing and Regulation (TDLR), and the Behavior Analyst Certification Board (BACB) (Collectively Defendants). This suit is brought forth given violations of the United States and Texas Constitutions as well as various Federal and State statutes. In support of these allegations, the Plaintiff will show unto the court the following:

### A. JURISDICTION

1. The Plaintiff bring this case pursuant to 42 USC 1983, 42 USC 1985, 42 USC 2000, 42 USC 12101, and various other federal and state Constitutional rights and statutes. The court has jurisdiction given the US Constitutional and federal statute questions.

### B. VENUE

2. The Plaintiff bring this action in the United States District Court for the Eastern District of Texas pursuant to 28 USC 1391 (b)(2) because the underlying event that gave rise to the Defendants actions (subject of the Plaintiff complaint) took place in FORT WORTH, TX where the Plaintiff operates his business. This is in the boundaries of the Northern District of Texas jurisdiction.

3. This venue is also more appropriate than others for multiple reasons. First, the state's interest in having it in Texas. Second, the federal questions asked. Third, the diversity of citizenship. The BACB is located in Colorado.

### C. BACKGROUND AND FACT OF CASE

4. The issue at controversy began on June 15, 2017, when Governor Greg Abbott signed a bill approving a new law requiring behavior analysts to be licensed in the State of Texas. The Bill SB 589.

5. Michael Moates is Chairman and Executive Director of the Global Institute for Behavior Practitioners and Examiners. He is a triple board-certified/licensed behavior analyst by the Qualified Applied Behavior Analysis Credentialling Board (QABA), Virginia Board of Medicine (VBM), and International Behavior Analysis Organization (IBAO). **See Exhibit A, B, and C.** Mr. Moates has been in the field of behavior analysis and psychology since 2015 working in home-based, center-based, school-based, and psychiatric-hospital based programs using the techniques of Applied Behavior Analysis (ABA). He holds a Bachelor of Science with a primary concentration in Psychology from Tarleton State University, Master of Arts with a

primary area of study of Psychology and is in the dissertation phase of his Doctor of Education. He achieved candidacy for the Doctor of Education in 2021. He is also a Qualified Mental Health Professional – Trainee by the Virginia Board of Counseling and Qualified Mental Health Professional – Registered by the Mental Health and Addictions Certification Board of Oregon. He was recently appointed as an adjunct instructor at the first tuition-free accredited university in the United States, University of the People. Mr. Moates also serves on the Student Health Advisory Committee in the Eagle Mountain Saginaw Independent School District. He holds a certificate in Accreditation Evaluation from the Distance Education Accreditation Commission (DEAC) (a university accreditation board recognized by the US Department of Education). Finally, Mr. Moates is a member of the Christian Counselors of Texas, Alonso Center for Psychodynamic Studies, and Carnegie Project on the Educational Doctorate.

6. The Plaintiff began working toward certification in 2015 and has worked in the field for over 10 years.

7. This entire case stems from 3 statutory problems. First, under OC 506.002(2), "Certifying entity" means the nationally accredited Behavior Analyst Certification Board or another entity that is accredited by the National Commission for Certifying Agencies or the American National Standards Institute to issue credentials in the professional practice of applied behavior analysis and approved by the department." Second, under OC 506.256 which allows for reciprocity it does not specify what "license requirements similar" is. Finally, the statute gives the department to authority to approve 3rd party entitles outside of the Behavior Analyst Certification Board. But neither the statute, nor the department rules layout a process by which someone can petition for approval. Nor is there a policy determining the process, timeframe, or application for alternative certification. This is clearly needed since the department has taken over a year to consider certification and has suspended all future meetings on the matter. Because there is no time limit this allows the government to engage in an unlimited restrain of due process. Respectfully, I ask this court to say that over a year is enough time. In addition, I provide evidence to the court that both Qualified

8. On 30 November 2021, Mr. Moates reaches out to the Texas Department of Licensing and Regulation to find out what he will need to do to apply for licensure in the State of Texas as a Behavior Analyst after passing the Qualified Behavior Analyst (QBA) exam offered by QABA. QABA is accreted by the ANSI National Accreditation Board. **See Exhibit D**. Katie Brice "Senior Program Specialist" emailed Mr. Moates stating "Thank you for contacting Texas Department of Licensing and Regulation (TDLR). The QASP-S

credential issued by QABA is ANSI accredited for autism services, not for applied behavior analysis. BACB is the only approved certifying entity in Texas for licensure as a behavior analyst or assistant behavior analyst. If you have other questions, please let me know." **See Exhibit E.** It is important to note that Mrs. Brice's statement was inaccurate. In fact, they noted this in a filing with the Virginia Board of Medicine where the state, "ANSI National Accreditation Board recommended that "QABA certification programs accredited by ANAB be included in the licensing of Applied Behavior Analysis.[1]" ANAB = ANSI National Accreditation Board. ANSI is an acceptable accreditation board by statute. See OC Section 5006.002 (2) under certifying entities. However, despite her inaccuracies, this did not answer Mr. Moates' question as he was calling to inquire about the QBA not the QASP-S credential. Mr. Moates inquired again and on 9 December 2021, TDLR via Heather Muehr, Manager of the Medical and Health Professions Section, replied to Mr. Moates letting him know that the QBA was under review, and they had been reviewing the QBA credential since 26 February 2021. **See Exhibit F.** Since that day on the 26th, the Behavior Analyst Advisory Board has not met to discuss this issue (as of 29 March 2022). This is a violation of the Texas Administrative Code Rule 121.69 (a) which states "The advisory board shall meet at least twice each year and at the call of the presiding officer of the commission or the executive director." The board has not met in over a year. COVID 19 is no excuse as many of the other TDLR boards have met and given the ability to meet remotely. In the 9 December 2021 letter, TDLR notifies Mr. Moates that there are no future meetings of the Behavior Analyst Advisory Board scheduled, essentially indefinitely halting review of the QABA credentials. Something to keep in mind here, when the legislature wrote the law, they did not intent for the behavior analyst advisory board to approve the certification, they intended for the department to review and make a determination. We know this because it started with the behavior analyst advisory board[2] but then the legislature intentionally changed the language to make it the responsibility of the department[3].

9. On 22 December 2022, Mr. Moates passes the QBA psychometric exam accredited by the national American National Standards Institute. At this point, Mr. Moates has verified his degree, 270 hours of behavior analysis coursework, federal and state background check, and on day is issued the QBA

---

[1] https://townhall.virginia.gov/L/viewcomments.cfm?commentid=121046
[2] https://legiscan.com/TX/text/SB589/id/1478094
[3] https://legiscan.com/TX/text/SB589/id/1599953

credential. On this same day, Mr. Moates attempts to apply for behavior analyst licensure in the State of Texas. However, Mr. Moates is denied the right to apply for licensure because TDLR website **DOES NOT** allow anyone to apply unless they are credentialed by the Behavior Analyst Certification Board. Since Mr. Moates was unable to apply, he was also not afforded his due process rights under the law.

10. On 14 January 2022, after numerous requests for help on the issue regarding application, TDLR finally responds nearly 3 weeks later to tell Mr. Moates that he will not be treated the same as every other applicant. That he must take the extra steps of printing out an application, going to the bank, requesting a check, and then mailing it to TDLR. This is even though every other applicant is allowed to apply and pay online. This requirement of mailing also delayed Mr. Moates' application. In that same letter on 14 January 2022 (the Plaintiff birthday), Mrs. Brice notes "Please note that only the Board Certified Behavior Analyst® (BCBA®) or Board Certified Behavior Analyst-Doctoral® (BCBA-D®) credentials are currently accepted for behavior analyst licensure in Texas. The Behavior Analyst Advisory Board will be discussing the QBA® and QASP-S® credentials, issued by QABA®, at a future board meeting and may make a recommendation to the Executive Director to approve or deny approval of these credentials for licensure. The date for this meeting has not been set." **See Exhibit E.** This in effect told the Plaintiff 1) that they had indefinitely put the evaluation on hold and 2) That his application would be denied without consideration given the fact that they have now said in writing that they will not accept his certification.

11. On 31 January 2022, after being called out for not holding any meetings as required by the TAC, TDLR notifies the public or a proposed rule change[4] that would remove the requirement of 2 meetings by the Behavior Analyst Advisory Board per year. Further showing the intent of TDLR to indefinitely delay board meetings[5].

12. On 2 February 2022, Mr. Moates attempts to file litigation in with the State District Court in Denton County, Texas. However, that filing is returned and not accepted because of the need for a final correction. Further, Mr. Moates decided that the federal courts were better for determine federal issues. Since Mr. Moates works in Fort Worth that is the Northern District of Texas Fort Worth Division. The following day,

---

[4]https://www.sos.texas.gov/texreg/archive/February42022/Proposed%20Rules/16.ECONOMIC%20REGULATION.html#62
[5]https://www.sos.state.tx.us/texreg/archive/January282022/Proposed%20Rules/16.ECONOMIC%20REGULATION.html#19

counsel for TDLR Elizabeth Salinas-Strittmatter reached out to Mr. Moates, stating to have the department served and that they would "not engaging in any further issues about the issues in controversy."

13. On 8 February 2022, Mr. Moates files his first request under the Texas Public Information Act. This request is made requesting documents related to this issue at hand. It was directed at documents that had to do with various credentialing boards and the process by which TDLR was considering them for licensure.

14. Despite the above statement, Mrs. Salinas-Strittmatter sets up a meeting with Plaintiff Moates on 14 February 2022. They discuss the issue but do not come to a resolution. At this meeting, Mrs. Salinas-Strittmatter informs Mr. Moates that they are waiting on QABA to return documentation. This subsequently was discovered to be not true. In fact, when Mrs. Salinas-Strittmatter made this statement, TDLR had not even sent the documentation to QABA. They sent the questions they had that day. TDLR mislead the Plaintiff into believing that QABA was at fault when TDLR had not done its due diligence. In addition, Mrs. Salinas-Strittmatter had now mislead Plaintiff Moates twice. She sends up a follow up email now redirecting him to another individual.

15. On 15 February 2022, the Virginia Board of Medicine issues the Licensed Behavior Analyst credential to Plaintiff Moates pursuant to Virginia statutes. That same day, Plaintiff Moates reaches out to Mrs. Salinas-Strittmatter to ask about reciprocity under the Texas Behavior Analysis Law Section 506.256.

16. On 24 February 2022, the department tells Plaintiff Moates he does not qualify for reciprocity because they have still after a year not determined whether they are going to accept the QBA credential for licensure. At this point, the still don't have a meeting scheduled with the Behavior Analyst Advisory Board to discuss this. At this same time, Plaintiff Moates filed a Petition for Rules Change to include QABA as a certifying entity.

17. On 7 March 2022, Plaintiff Moates requested communications regarding the documents TDLR was using to consider the QBA certification. They failed to respond within the 10-day period as required by law. Further, after being reminded the Friday before. They then tried to walk it back and say that they needed clarification after the deadline had passed. Under TAC Rule 70.11(6)(a), failure to request an attorney general opinion within 10 days "will result in a presumption that the information is open[6]"

---

[6]https://texreg.sos.state.tx.us/public/readtac$ext.TacPage?sl=R&app=9&p_dir=&p_rloc=&p_tloc=&p_ploc=&pg=1&p_tac=&ti=1&pt=3&ch=70&rl=11

18. On 24 March 2022, TDLR responds to Plaintiff Moates' 8 February 2022 Public Information Act Request with a document drop and exception request they send to the Texas Attorney General. The exemptions they claim are attorney-client privilege, pending litigation (which at this point is not filed), and internal communications. It is however important to note that TDLR withheld documents that it did not seek an exemption for in violation of the law. The documents I am referencing are questions sent to QABA on 14 February 2022. These questions and communications would not be covered by attorney-client privilege because they are between two non-attorneys Mrs. Brice and Hollie Benincosa of QABA. They are not internal documents and finally, they are not related to litigation. So why TDLR was dishonest for the third time since this ordeal began is beyond the Plaintiff. But in the letter the Defendant sent to the Attorney General, they state that they need to withhold documents because it "would reveal information that would damage TDLR's position at this juncture." The Plaintiff would ask this court to find out why TDLR is engaging in a campaign of mis-information, dishonesty, cover-ups, and constant delays.

19. On 27 March 2022, after numerous delays, and at the request of the department, Plaintiff Moates edits their application template, fills it out, and mails it to them via FedEx. This is despite Katie Brice saying "Please note that only the Board Certified Behavior Analyst® (BCBA®) or Board Certified Behavior Analyst-Doctoral® (BCBA-D®) credentials are currently accepted for behavior analyst licensure in Texas.  The Behavior Analyst Advisory Board will be discussing the QBA® and QASP-S® credentials, issued by QABA®, at a future board meeting and may make a recommendation to the Executive Director to approve or deny approval of these credentials for licensure.  The date for this meeting has not been set" on 14 January 2022.

### D. FUTHER FACTS THE PLAINTIFF ASKS THE COURT TO CONSIDER

20. The 10th Amendment gives the powers not delegated to the United States to the states, not corporations such as the Behavior Analyst Certification Board or the Association of Professional Behavior Analysts. The government should be required to do its job rather than outsource to one corporation. If the state chooses not to retain its right the Constitution does not say the rights, then get transferred to a 3rd party corporation... it says just the opposite "reserved to the States respectively, or to the people."

21. There is an emergent need for additional ABA providers. Licensed Behavior Analysts take on an average case load of 15 clients at the maximum. There is a total of 3,577 behavior analysts in Texas (Licensing List

sent to Plaintiff from TDLR). In Texas, 201,617 minors have Autism,[7] that means that currently in order to offer ABA to just student with Autism behavior analysts would have to take on a caseload of 56 clients. Currently of the 201,617 students with Autism, if the average behavior analyst took a normal case load of 15, only 53,655 students would receive care. This doesn't even consider other behavior analysis specialties that treat ADHD, PTSD, Addiction, Gambling, Sexual Addiction, etc. We are short. There are long waiting lists and this is a crisis.

22. The Behavior Analyst Certification Board and its academic accreditation arm the Association for Behavior Analysis International (who accredits its programs) are affiliated and continue to allow the certification of multiple behavior analysts in Canton, Massachusetts at the Judge Rotenberg Center which shocks minors with maladaptive behaviors sending an electrical current through their body[8]. I implore the court to watch the videos attached in this footnote[9]. The United Nations designated this torture. When our Lord and Savior Jesus Christ was on the cross, he was tortured and then crucified before being killed. Plaintiff Moates is firmly against torture of any kind. He believes that because TDLR refuses to evaluate alternatives they are attempting to force Plaintiff Moates to associate with the BACB in violation of his First Amendment right against government interference of religion. Further, it is a violation of his freedom to associate. See NAACP v. Alabama. This can never be cured because the BACB at this time is aware of it and has taken no action. Even if the BACB took action today, the Plaintiff would not by definition of his religion be able to associate with an organization that condoned torture for even a short time.

23. In a similar case, Time Warner Cable Inc. v. Hudson, 667 F.3d 630, 636 (5th Cir. 2012) ("When the government targets certain speakers for the exclusion of benefits bestowed on similar parties, "no further showing of suffering based on that unequal positioning is required for purposes of standing." Hudson, 265 Fed.Appx. at 218; see also Lujan, 504 U.S. at 561–62, 112 S.Ct. 2130.") Here there an alternative to the Behavior Analyst Certification Board. These include Qualified Applied Behavior Analysis Credentialing

---

[7] https://www.hhs.texas.gov/sites/default/files/documents/laws-regulations/reports-presentations/2020/texas-autism-council-report-april-2019.pdf
[8] https://www.wbur.org/hereandnow/2021/08/12/shock-treatment-school-disability
[9] https://www.youtube.com/watch?v=Ko-ip3MImik
https://www.youtube.com/watch?v=-aUIhWmDPeI
https://www.youtube.com/watch?v=PUhPMNdnOW8
https://www.youtube.com/watch?v=A7hkIHN-qqY

Board, International Behavior Analysis Organization, and Behavior Intervention Certification Council. This alone is enough to find that TDLR is in violation of the law. Here, the Plaintiff, is being told that he must operate in the way that the BACB deems acceptable and that includes various previsions of speech, religion, association, etc. For example, the BACB has an ethics code and in the ethics code it holds individuals responsible for public statements. This is under Section 5. By limiting speech, the BACB has engaged in censorship under the First Amendment by virtue of their status as a de facto government agency. Taking it a step further, because TDLR refuses to approve other agencies, they are also limiting speech by saying that you can only be a behavior analyst if you confirm to their standards. Finally, the legislature is in violation of the Constitution by stating that you must be in compliance with this policy in the statute.

24. The behavior analyst statute restricts the term behavior analyst to those licensed or those exempt. The term licensed behavior analyst is restricted to those licensed. However, the 5th Circuit Court of Appeals ruled in Serafine v Branaman, et al that "Thus, assuming arguendo that the speech of professionals can be regulated incidentally to a valid licensing scheme, Justice White's concurrence suggests that such restrictions—to avoid running afoul of the First Amendment—are properly confined to occupational-related speech made to individual clients." Meaning the state cannot restrict the term outside of those who acting within occupational speech made to clients. The court continues "Any interest the government can claim in protecting clients from manipulation or exploitation by a psychotherapist fails when the psychotherapist is no longer speaking to the client in her capacity as such." Thus, the restriction of the term behavior analyst outside of a direct client relationship is illegal. This is important because TDLR had previously told the Plaintiff he could not use the term based on his license from Virginia in the meeting with attorneys. However, Plaintiff disputes that if he is not speaking to a client that the statute would be unconstitutional.

25. The Civil Rights Act of 1964 outlaws' discrimination based on race, color, religion, sex, national origin, and later sexual orientation and gender identity. However, the BACB has a clear history of discrimination policies that lead to the minority being unable to get certified and therefore licensed. 85% of certified people are female with just over 13% of certified people, male. 0.38% are American Indian/Natives. 6.61%

are Asian. 9% of Behavior Analysts are African American. 21% are Hispanic[10]. This is a real problem for disadvantaged communities and people who prefer a male analyst in healthcare. The BACB used to certify analysts globally. The no longer do and are even cutting down on the international community. This means individuals who want to practice internationally will be unable to because they cannot under any circumstances become certified. This includes military families and families of the State Department.

26. Again, pursuant to the Civil Rights Act of 1974, the government is not allowed to discriminate based on disability. However, that is exactly what the BACB has done. 72% of its certified are practitioners in the field of autism spectrum disorder and 10% choose not to identify. That leaves 12% of individuals to work in other fields. The BACB is a mainly Autism focused agency. This is discriminatory against individuals who wish to utilize behavior analytic services for other intellectual, learning, personality, and cognitive disabilities. Not only are there few qualified practitioners in other areas but without supervisors in other areas, the number of practitioners in other areas will not grow. To put it into perspective:

Number of Behavior Analysts Certified by the BACB in the United States of America:

| | | |
|---|---|---|
| Sports/Fitness – 39 | Organizational - 365 | Education - 6701 |
| Public Policy – 49 | Research - 19 | Corrections - 49 |
| Supervision - 177 | Intellectual Disability - 2734 | Child Welfare - 99 |
| Parent Training - 493 | Higher Education - 642 | Pediatrics - 458 |
| Clinical Behavior Analysis - 1762 | Gerontology - 62 | Addiction – BACB Doesn't Track |
| Animal - BACB Doesn't Track | Prevention Behavior - BACB Doesn't Track | Life Coaching - BACB Doesn't Track |
| Non-Profit - BACB Doesn't Track | LGBTQ - BACB Doesn't Track | Learning Disability - BACB Doesn't Track |
| Sexual Behavior - BACB Doesn't Track | Environment Preserv - BACB Doesn't Track | Security Analysis - BACB Doesn't Track |

27. The above makes a good next point. The BACB only allows its BCBA's or specialty certified psychologists to provide supervision of technicians, and aspiring analysts. This creates problems for other supervisors who have behavior analysis in their scope of practice such as medical doctors practicing psychiatry. They by law have this in their scope of practice, yet they cannot supervise technicians.

28. Most professions of mental health if not all are regulated by the states and not external certification boards. The top 6 mental health fields are medicine, psychology, counseling, social work, marriage and family therapy, and chemical dependency. While some states may require an applicant to pass a board exam,

---

[10] https://www.bacb.com/bacb-certificant-data/

certification is not usually a requirement of licensure. But the BACB will not allow individuals to take their exam unless they plan to get certified.  Further none of the above fields require certification in Texas to be licensed.

29. Texas defines the practice of behavior analysis as:

    a.   (a)  The practice of applied behavior analysis is the design, implementation, and evaluation of instructional and environmental modifications to produce socially significant improvements in human behavior.

    b.   (b)  The practice of applied behavior analysis includes the empirical identification of functional relations between behavior and environmental factors, known as functional assessment or functional analysis.

    c.   (c)  Applied behavior analysis interventions:

        i.   (1)  are based on scientific research and the direct observation and measurement of behavior and environment; and

        ii.   (2)  use contextual factors, motivating operations, antecedent stimuli, positive reinforcement, and other procedures to help individuals develop new behaviors, increase or decrease existing behaviors, and elicit or evoke behaviors under specific environmental conditions.

    d.   (d)  The practice of applied behavior analysis does not include:

        i.   (1)  psychological testing, psychotherapy, cognitive therapy, psychoanalysis, hypnotherapy, or counseling as treatment modalities; or

        ii.   (2)  the diagnosis of disorders.

30. The state has carved out various exemptions. However, it has missed so many things. Here are a few examples of those practicing in accordance with the above definition and by virtue of practicing are in violation of the law:

    a.   Prison Guards – They have someone in a different environment, they attempt to modify their behavior and rehabilitate prisoners. Prisoners are punished for bad behavior and rewarded for good behavior. Prison Guards do not have a scope of practice that includes Applied Behavior Analysis.

b. Psychiatric Technicians – While behavior technicians under the supervision of a Licensed Behavior Analyst (BCBA), those implementing psychiatric behavior analysis at a mental hospital are doing so under a psychiatrist and are not covered by the law. The psychiatrist would be covered by the law, but the technicians are not licensed in the State of Texas and therefore would not be exempt from the implementation of behavior analytic services.

c. Federal Behavior Analysts – Members of the FBI's NCAVC Behavior Analysis Unit get requests from federal, state, local, and international law enforcement and some days can be in a state for many days. Under Section B above, they would only be covered for 20 days and that is assuming they are licensed in another state. Most empirical behavior analyst do not require licensure.

31. QABA is approved by the following:

   a. Approved by Statute:

   i. State of Alaska – (via Sec. 08.15.20 with Board Approval https://www.commerce.alaska.gov/web/Portals/5/pub/BehaviorStatutes .pdf)

   ii. State of Indiana – (via Sec. IC 25-8.5-3 with Committee Approval - http://iga.in.gov/legislative/laws/2021/ic/titles/025/#25-8.5-3-1)

   iii. State of Kansas – (via Sec 65-7502 with Agency Approval - https://www.ksrevisor.org/statutes/chapters/ch65/065_075_0002.html)

   iv. State of Louisiana – (via SB 134 with Board Approval - https://lababoard.org/wp-content/uploads/Laws-act351.pdf)

   v. State of Massachusetts – (via 262 CMR 10 with the Passing of a Board Approved Exam - https://www.mass.gov/doc/262-cmr-10-requirements- for-licensure-as-an-applied-behavior-analyst-and-assistant- applied/download) vi. State of Missouri – (via Section 337.300 - https://revisor.mo.gov/main/OneSection.aspx?section=337.300)

   vi. State of North Dakota - (via Section 43-64-05 - https://www.ndlegis.gov/cencode/t43c64.pdf#nameddest=43-64-03)

   vii. State of Ohio - (via Section 4783.04 https://codes.ohio.gov/ohio-revised- code/section-4783.04)

       viii.   State of Oregon – (via Chapter 824

          https://secure.sos.state.or.us/oard/displayChapterRules.action?selected Chapter=197)

       ix.   State of Rhode Island (via 5-86-9 http://webserver.rilin.state.ri.us/Statutes/TITLE5/5-

          86/5-86-9.htm)

       x.   State of Virginia - (via 54.1-2957

          http://www.dhp.virginia.gov/media/dhpweb/docs/med/leg/Ch29_Medic ine.pdf) xii. State

          of Wyoming – (via 22LSO-0341 https://www.wyoleg.gov/2022/Introduced/HB0110.pdf)

b.   Approved by Policy:

       i.   Department of Defense – Military Health Service (TRICARE Operations Manual

          6010.59-M https://manuals.health.mil/pages/DisplayManualHtmlFile/2021-03-

          26/AsOf/TO15/C18S4.html)

c.   Approved via Reciprocity:

       i.   State of Connecticut – (via Sec. 191 - https://portal.ct.gov/DPH/Practitioner-Licensing--

          Investigations/Behavioral-Analyst/Practice-Act)

       ii.   State of Hawaii – (via Sec. 465 with Director Approval -

          https://www.capitol.hawaii.gov/hrscurrent/Vol10_Ch0436-

          0474/HRS0465D/HRS_0465D-0009.htm)

       iii.   State of Indiana – (via Sec. IC 25-8.5-3 with Committee Approval -

          http://iga.in.gov/legislative/laws/2021/ic/titles/025/#25-8.5-3-1)

       iv.   State of Massachusetts – (via 262 CMR 10 - https://www.mass.gov/doc/262-cmr-10-

          requirements-for-licensure-as- an-applied-behavior-analyst-and-assistant-

          applied/download)

       v.   State of Missouri – (via Section 337.300 -

          https://revisor.mo.gov/main/OneSection.aspx?section=337.300)

       vi.   State of Nevada – (via NRS 437.215 https://www.leg.state.nv.us/NRS/NRS-

          437.html#NRS437Sec215)

       vii.   State of Tennessee – (via 63-11-311

          https://advance.lexis.com/documentpage/?pdmfid=1000516&crid=0967 3bc1-20dd-4ec4-

ab1c-84bcbf06671e&nodeid=ACKAALAADAAL&nodepath=%2FROOT%2FACK%

2FACKAAL%2FACKAALAAD%2FACKAALAADAAL&level=4&haschildren=&p

opulated=false&title=63-11-

311.+Reciprocal+licensing.&config=025054JABlOTJjNmIyNi0wYjI0LTRjZGE

tYWE5ZC0zNGFhOWNhMjFlNDgKAFBvZENhdGFsb2cDFQ14bX2GfyBTaI9

WcPX5&pddocfullpath=%2Fshared%2Fdocument%2Fstatutes-

legislation%2Furn%3AcontentItem%3A5CD7-JJM0-R03K-W39V-00008-

00&ecomp=5g1_kkk&prid=1d8f06a6-ea35-4e68-8377-781eb7269b1f)

32. QABA is accredited by ANSI National Accreditation Board (ANAB).

33. The QABA website is offered in 13 different languages supporting people around the world. Same with the
coursework and exams. They are offered across the world to diverse backgrounds including both men and
women of color.

34. QABA International Standards Committee represents the United States, Spain, Philippines, Africa, Nigeria,
Ecuador, South Korea, India, Brazil, Czech Republic, Peru, Japan, Pakistan, Egypt, UAE, Poland, Kenya,
and Saudi Arabia.

35. QABA has a code of ethics and a complaints process.

36. QABA requires a federal and state background check for all certified individuals, the BACB does not
require this for analysts.

37. The Court can see a side-by-side comparison of the BCBA and QBA as Exhibit G. We note to the court this
is as of December 2021 when the petitioner sought licensure from TDLR.

38. The TDLR Behavior Analyst Advisor Board has not met in over a year since 26 February 2021.

39. TDLR continues to engage in delay tactics. They have been considering the QBA since 26 February 2021.
They have been considering the QASP-S since 2020. They did deny the QASP-S stating that it was an
"Autism certificate" and while the coursework includes Autism this is just an additional component of the
behavior analysis coursework. It is not Autism specific as noted by the accreditation board ANSI above.

40. TDLR has not been truthful and has given mis-information or omitted information required by law.

41. TDLR is violating not only the law but also the Texas Administrative Code and its own rules.

42. TDLR has conspired with the BACB and various other entitles to block other certification types using the BACB's private email database that is not open to the public.

43. TDLR has been dishonest. According to the email from Katie Brice, the BCBA and BCBA-D are the only credentials accepted for licensure. That is clearly not true. Pursuant to a public information act request, the department provided the Plaintiff with a spreadsheet all Licensed Behavior Analysts and when you delete the assistants and the expired, you get 3,393. But according to the Behavior Analyst Certification Board there are 2,877 BCBA's and 121 BCBA-D's[11]. That totals 2,998. So where do the other 516 Licensed Behavior Analysts come from? So, either TDLR or the BACB is being dishonest. If TDLR, they have given inaccurate information responsive to a PIA request or have failed to check certification. Either way this is not good.

44. The Plaintiff notes all parties are in violation of TFEAA of 1983 Sec. 15.05(a) and that while the government entities are not subject to the Texas Free Enterprise and Antitrust Act of 1983(b forward) the BACB and APBA are. These two Defendants engaged in a civil conspiracy to restrict trade. There are 5 elements to this. 1) Two or more people. The BACB and APBA and various other state entities including Texas. 2) Attempted to restrict the practice of behavior analysis to the BACB credentials only. 3) They met privately behind closed doors numerous times via a private email exchange where they communicated about restricting trade. 4) It was unlawful under the Texas Free Enterprise and Antitrust Act of 1983. 5) Plaintiff continues to suffer damages including loss of income, inability to obtain license, loss of due process, etc. Information about this private email server can be viewed on the BACB's website[12]. They only allow governments to communicate with them in it. They call it the Licensure Exchange Listserv. The Texas Administrative Code remains at odds with this law as it restricts trade and commerce under section (a) making it illegal. They are also in violation of 15 USC 2 the Clayton Act.

45. Further, the attorney general's office has a checklist on their website that defines collusion with regards to anti-trust regulation[13]. Here are the red flags that apply:

    a.   The BACB defines the licensing market

---

[11] https://www.bacb.com/services/o.php?page=101135&s=1
[12] https://www.bacb.com/for-regulators/
[13]https://www.texasattorneygeneral.gov/sites/default/files/files/divisions/antitrust/AntitrustCollusionFactSheet.pdf

    b.  Tight Regulation make it impossible to substitute the BACB

    c.  The legislature pulled the law from APBA directly[14]

    d.  The BACB and APBA colluded on the legislation[15]

    e.  APBA was set up to per its website "Although the Behavior Analyst Certification Board, Inc. is an international organization concerned with professional interests, it is a credentialing body rather than a membership organization, and is constrained in its involvement in certain activities by virtue of its mission and its 501(c)(3) nonprofit status." Literally created to do what the BACB cannot legally do. APBA brags that it "it works closely with the BACB."

46. The Plaintiff asks the court to note that what has happened is unprecedented in this state. As far as the Plaintiff can tell there is no other licensure that requires certification from one board. The Plaintiff reviewed the psychology, medical, social work, professional counseling, marriage and family therapy, and chemical dependency statutes and not a single one requires certification by a board.

47. Also, to be transparent with the court, the Plaintiff has filed complaints with the FTC, FDA, IRS, Department of Justice, NCCA, etc. alleging anti-trust violations, inhumane treatment, non-profit violations, etc.

### E. CAUSES OF ACTION / QUESTION OF LAW

48. Count 1: Violation of the First Amendment to the United States Constitution - Religion

    a.  Plaintiff incorporates all statements of fact above.

    b.  Plaintiff Moates is a Christian who believes torturing children is wrong.

    c.  Defendant TDLR and its Executive Director refuse to respect religious beliefs regarding torture by working on finding an alternative certification process/board.

    d.  Defendants would require the Plaintiff to violate their religious beliefs to associate with an organization that has approved certification by individuals engaged in shocking children in order to be licensed.

    e.  The Defendants actions continue to cause not only the Plaintiff harm but also the consumers of Applied Behavior Analysis services.

---

[14] https://www.apbahome.net/resource/resmgr/pdf/APBA_ModelLicensureAct_Aug20.pdf
[15] https://www.bacb.com/for-regulators/

49. Count 2: Violation of the First Amendment to the United States Constitution - Association

    a.  Plaintiff incorporates all statements of fact above.

    b.  Plaintiff Moates is a Christian who believes torturing children is wrong.

    c.  Defendants refuse to respect religious beliefs regarding torture by working on finding an alternative certification process/board.

    d.  Defendants would require the Plaintiff to force the Plaintiff to associate with an organization that goes against their moral values and faith in order to be licensed.

    e.  The Defendants actions continue to cause not only the Plaintiff harm but also the consumers of Applied Behavior Analysis services.

50. Count 3: Violation of the Civil Rights Act of 1964 - Race

    a.  Plaintiff incorporates all statements of fact above.

    b.  Defendants refuse address diversity of race issue.

    c.  The Defendants actions continue to cause not only the Plaintiff harm but also the consumers of Applied Behavior Analysis services.

51. Count 4: Violation of the Civil Rights Act of 1964 - Disability

    a.  Plaintiff incorporates all statements of fact above.

    b.  Defendants refuse address diversity of disability practitioner's issue.

    c.  The Defendants actions continue to cause not only the Plaintiff harm but also the consumers of Applied Behavior Analysis services.

52. Count 5: Violation of the Civil Rights Act of 1964 - Sex

    a.  Plaintiff incorporates all statements of fact above.

    b.  Defendants refuse address diversity of sex/gender issue. 85% are women.

    c.  The Defendants actions continue to cause not only the Plaintiff harm but also the consumers of Applied Behavior Analysis services.

53. Count 6: Violation of the Civil Rights Act of 1964 – National Origin

    a.  Plaintiff incorporates all statements of fact above.

    b.  Defendants refuse address diversity of nationality issue.

    c.  The Defendants actions continue to cause not only the Plaintiff harm but also the consumers of Applied Behavior Analysis services.

54. Count 7: Violation of the Behavior Analyst Act

    a.  Plaintiff incorporates all statements of fact above.

    b.  Defendants refuse create a process by which individuals can apply via reciprocity.

    c.  The Defendants actions continue to cause not only the Plaintiff harm but also the consumers of Applied Behavior Analysis services.

55. Count 8: Violation of the Civil Rights Act of 1964 - Race

    a.  Plaintiff incorporates all statements of fact above.

    b.  Defendants refuse address diversity issue.

    c.  The Defendants actions continue to cause not only the Plaintiff harm but also the consumers of Applied Behavior Analysis services.

56. Count 9: Violation of Texas Administrative Code Rule 121.69(a)

    a.  Plaintiff incorporates all statements of fact above.

    b.  Defendants refuse to hold meeting of the Behavior Analyst Advisory Board.

    c.  The Defendants actions continue to cause not only the Plaintiff harm but also the consumers of Applied Behavior Analysis services.

57. Count 10: Violation of Texas Administrative Code Rule 121.21(a)(1)

    a.  Plaintiff incorporates all statements of fact above.

    b.  Defendants refuse create an official process by which equivalent certification boards can apply for approval.

    c.  The Defendants actions continue to cause not only the Plaintiff harm but also the consumers of Applied Behavior Analysis services.

58. Count 11: Violation of 42 USC 1985 (3)

    a.  Plaintiff incorporates all statements of fact above.

    b.  Defendants conspired with various other state licensing boards and the Behavior Analyst Certification Board via a privately run email server not accessible to the public.

  c. The Defendants actions continue to cause not only the Plaintiff harm but also the consumers of Applied Behavior Analysis services.

59. Count 12: Violation of Tenth Amendment of the US Constitution

  a. Plaintiff incorporates all statements of fact above.

  b. Defendants are derelict in their duty passing it off to a corporation.

  c. The Defendants actions continue to cause not only the Plaintiff harm but also the consumers of Applied Behavior Analysis services.

60. Count 13: Violation of Section 3 of the Texas Constitution

  a. Plaintiff incorporates all statements of fact above.

  b. Defendants are not providing equal rights to all communities.

  c. The Defendants actions continue to cause not only the Plaintiff harm but also the consumers of Applied Behavior Analysis services.

61. Count 14: Violation of Section 19 of the Texas Constitution

  a. Plaintiff incorporates all statements of fact above.

  b. Defendants have deprived Plaintiff Moates of his right to due process by not allowing him to apply or have a hearing regarding the denial of application.

  c. The Defendants actions continue to cause not only the Plaintiff harm but also the consumers of Applied Behavior Analysis services.

62. Count 15: Violation of the Texas Free Enterprise and Antitrust Act of 1983

  a. Plaintiff incorporates all statements of fact above.

  b. Defendants engaged in the blocking of alternative certification boards through a closed email server conspiracy between states and the BACB.

  c. The Defendants actions continue to cause not only the Plaintiff harm but also the consumers of Applied Behavior Analysis services.

63. Count 16: Violation of the Clayton Act 15 USC 2

  a. Plaintiff incorporates all statements of fact above.

  b. Defendants engaged in the blocking of alternative certification boards through a closed email server conspiracy between states and the BACB.

     c.   The Defendants actions continue to cause not only the Plaintiff harm but also the consumers of Applied Behavior Analysis services.

64. Count 17: Violation of the First Amendment to the United States Constitution - Speech

     a.   Plaintiff incorporates all statements of fact above.

     b.   Defendants require the Plaintiff to agree to the BACB's ethics code which restricts speech under Section 5's public statement requirements.

     c.   Further, Plaintiff Moates is a member of the press and restricting his speech not only violates his personal speech but his right to freedom of the press. They do this by restricting what he is allowed to say publicly even when he is not practicing behavior analysis.

     d.   The statute also restricts the term behavior analyst unconstitutionally.

     e.   The Defendants actions continue to cause not only the Plaintiff harm but also the consumers of Applied Behavior Analysis services.

65. Count 18: Violation of the Due Process Clause of the Fifth and Fourteenth Amendments of the US Constitution

     a.   Plaintiff incorporates all statements of fact above.

     b.   Plaintiff was denied the ability to apply for licensure in December of 2021.

     c.   Plaintiff was denied equal opportunity to address the behavior analysis advisory board within the required time by the TAC.

     d.   Plaintiff was denied equal opportunity to address the department because he did not have access to the private database of misinformation fed to the department by the BACB.

     e.   Plaintiff had subsequent applications denied on the face because they only accept BACB certifications. This was done without a hearing or any due process.

     f.   Various pieces of the law are vague and should be void under the vagueness doctrine. For example, Sec 506.256(b)(1)(c) does not define what "as appropriate" means thereby leaving the Plaintiff and Defendants to disagree. Another example is under Subchapter B, it does not discuss people who by definition do not meet one of the exemptions but practice behavior analysis which is defined as "The practice of applied behavior analysis is the design, implementation, and evaluation of instructional and environmental modifications to produce socially significant

improvements in human behavior." By law, that would include peace officers making an arrest, corrections officers engaging in rehabilitation within the prisons, an emergency medical technician moving a patient to a psychiatric hospital for treatment and modification of psychotic behavior. Yet, none of these have behavior analysis in their scope of practice.

g. Finally, Sec. 506.054 allows for those who are certified by the Qualified Applied Behavior Analysis Credentialing Board as Applied Behavior Analysis Technicians (ABAT™) to practice in Texas. It specifically lists those who are designated the ABAT which was registered for trademark in 2015[16] prior to even the first draft of the Texas bill that would be approved. So, by definition, only QABA is authorized by law to bestow the ABAT credential. The bill was introduced on 24 January 2017. The Applied Behavior Analysis Technician was used by QABA as early as 2009 and can be seen being used from various handbooks and documents from 2012[17], 2014[18], 2017[19], 2021[20]. So, the state authorizes the ABAT by QABA but does not recognize its supervisors the QASP-S or QABA. That does not make sense because by ethical and certification guidelines they are line technicians who require supervision from a QBA or QASP-S, see page 4[21]. Additionally, the BACB only recognizes its own line technicians and therefor would make it impossible for supervision from them.

h. The statute under Sec 506.253 allows for a 3rd party certification to be allowed after board review and approval but the statute nor the Texas Administrative Code lay out a process for this procedure which has left for over a year's time delay without timely due process.

i. Sec. 506.059 (b) is flat out unconstitutional as defined in Serafine v Branaman in the 5th Circuit as "Even though the state may have the power to regulate the professional speech of psychologists incidental to a valid licensing scheme, if that scheme affects the speech of people beyond the

---

[16] https://tmsearch.uspto.gov/bin/showfield?f=doc&state=4803:ju8rww.3.1
[17] https://silo.tips/download/applied-behavior-analysis-technician-abat
[18] http://innovative-learning.com/bh/downloads/Candidate-Handbook.pdf
[19] https://www.ansica.org/wwwversion2/ANSICAfiles/Certificates/21578/QABA%20Final%20Certificate.pdf
[20] https://www.ansica.org/wwwversion2/outside/ALLdirectoryDetails.asp?menuID=2&prgID=201&prgID1=201&orgID=2168&status=4
[21] https://qababoard.com/wp-content/uploads/ABAT-Candidate-Handbook-06-22-21.pdf

purview of the state's interests or power, it is overbroad." Here the law is overbroad because it

goes beyond the practice of behavior analysis.

### F. DAMANGES

66. As a result of the Defendants unlawful conduct, Plaintiff continue suffer economic damages including past

and future lost income, and other financial damages.

67. Defendants continue to cause the Plaintiff mental anguish and anxiety by discriminating on the basis of

disability, race, sex, and occupational specialty.

68. Defendants continue to cause the Plaintiff mental anguish and anxiety by refusing to respect his religion

that is protected under the First Amendment.

69. Defendants continue to cause the Plaintiff mental anguish and anxiety by refusing to respect his free speech

that is protected under the First Amendment.

70. Defendants continued delays and malicious conduct calls for damages.

### G. JURY DEMAND

71. Plaintiff demands a trial by jury of all of the issues contained in this petition.

### H. PRAYER

72. Wherefore, Premises Consider, Plaintiff request that:

73. The Court assume jurisdiction of this case and cite the Defendants to appear;

74. The Court award the Plaintiff damages from the BACB only, not the government;

75. Issue a nation-wide preliminary injunction declaring any licensing statute that only allows the BACB or

one certification board certification for licensure unconstitutional;

76. Issue a nation-wide final injunction declaring any licensing statute that only allows the BACB certification

for licensure unconstitutional;

77. The Court issue a Preliminary Injunction requiring the Texas Department of Licensing and Regulation to

add the QABA behavior analysis certifications to its approved certifications for licensure;

78. The Court issue a Permanent Injunction requiring the Texas Department of Licensing and Regulation to

add the QABA behavior analysis certifications to its approved certifications for licensure;

79. The Court issue a Permanent Injunction requiring Texas Department of Licensing and Regulation to issue

Plaintiff Moates a Behavior Analyst License.

# I. SERVICE

80. Plaintiff Moates can be served and consents to service via email if service is sent to both email addresses:

    michaelsmoates@gmail.com **and** michael@gibpe.org

81. Defendants Texas Department of Licensing and Regulation and its Executive Director have consented to service via email on 8 February 2022. The email is Elizabeth.Salinas-Strittmatter@tdlr.texas.gov. **See Exhibit H.**

82. Defendant Behavior Analyst Certification Board can be served at Behavior Analyst Certification Board, 7950 Shaffer Parkway, Littleton, CO 80127.

**Respectfully Submitted,**

**/s/ Michael S. Moates, MA, QBA, LBA**

michael@gibpe.org

michaelsmoates@gmail.com

2700 Colorado Boulevard #1526

Denton, TX 76210

Cell Phone: 817-999-7534

EXHIBIT A



Qualified Applied Behavior Analysis Credentialing Board

*Michael Moates*

Certificate #12471

has passed all requirements for and is now credentialed as

QBA

Qualified Behavior Analyst

dated 22 December 2021

This certificate expires 01 January 2024

Claire Norris, QBA

- 24 -

EXHIBIT B

# INTERNATIONAL BEHAVIOR ANALYSIS ORGANIZATION™

This document certifies that

*Michael Moates*

has successfully achieved the certification

International Behavior Analyst



International Behavior
Analysis Organization

*Ethics, Education, Excellence*

January 23, 2022
Date

January 23, 2024
Expires

Certificate

4237805

- 25 -

EXHIBIT C



## Virginia Department of Health Professions
## License Lookup

Current as of 04/01/2022 19:00

Back to License Lookup Result

| License Information | |
|---|---|
| License Number | 0133002387 |
| Occupation | Behavior Analyst |
| Name | Michael Mcates |
| Address | Denton, TX 76210 |
| Initial License Date | 02/15/2022 |
| Expire Date | 01/31/2025 |
| License Status | Current Active |
| Additional Public Information* | No |

This serves as primary source verification of the credential issued by the Commonwealth of Virginia and meets the requirements of the Joint Commission.

* "Yes" means that there is information the Department must make available to the public pursuant to §54.1-2400.2.H of the Code of Virginia; please note that this may also include proceedings in which a finding of "no violation" was made. For additional information click on the "Yes" link above. "No" means no documents are available.

Back to License Lookup



# CERTIFICATE OF ACCREDITATION

## The ANSI National Accreditation Board

Hereby attests that

## Qualified Applied Behavior Analysis Credentialing Board

### 7545 Irvine Center Drive, Suite 200, Irvine, CA 92618, United States

Fulfills the requirements of

*ISO/IEC 17024:2012 General requirements for bodies operating certification of persons*

WITH THE FOLLOWING SCOPE OF ACCREDITATION:

GRANTED 2017-12-04: Applied Behavior Analysis Technician® (ABAT®)
GRANTED 2019-12-10: Qualified Autism Services Practitioner - Supervisor® (QASP-S®)
GRANTED 2020-12-01: Qualified Behavior Analyst (QBA)

The current scope of accreditation can be verified at www.anab.org.



Dr. Vijay Krishna - Senior Director of Accreditation, Credentialing

**Valid Through:** 2022-12-04
**Accreditation ID:** #1168



Certificate ID: MUCBHBYB

- 27 -

EXHIBIT D

**EXHIBIT E**

RE: BHV - CLARIFICATION NEDDED    Inbox ×                                                          Nov 16, 2021, 1:11 PM

**Katie Brice** <Katie.Brice@tdlr.texas.gov>
to Michaelomaine@gmail.com ▾

Thank you for contacting Texas Department of Licensing and Regulation (TDLR). The OASP-S credential issued by QABA is ANSI accreditation for autism services, not for applied behavior analysis. BACB is the only approved certifying entity in Texas for licensure as a behavior analyst or assistant behavior analyst. If you have other questions, please let me know.

Sincerely,

Katie Brice
Senior Program Specialist
Medical and Health Professions
Regulatory Program Management
Texas Department of Licensing and Regulation

**Customer's Name:** Michael Moates
**Customer's Phone #:** 8175697524
**Customer's Email:** Program: Behavior Analysis

**Type of Issue:** Cust indicate that OASP certification issued by the QABA Credentialing Board is accredited by ANSI. But in our FAQ shows that is not accredited. He is looking at their website and it showing that is. He also mentions that there is alot of misleading info on the website where they refer to the agency as entity. Please have someone reach out to him. TY

- 28 -



# TEXAS DEPARTMENT OF LICENSING & REGULATION
Regulatory Program Management Division • PO Box 12157 • Austin, Texas 78711 • (512) 463-6599
www.tdlr.texas.gov

December 9, 2021

Mr. Michael Moates, M.A., CAP, NP, QMHP-R/T, RBT
Sent via Email to: michaelsmoates@gmail.com

RE:   Approved Certifying Entity for Behavior Analyst license

Dear Mr. Moates;

On November 4, 2020, the Behavior Analysts Advisory Board (advisory board) met and heard a report from the Licensing Workgroup which reviewed and studied the Qualified Applied Behavior Analysis Credentialing Board's (QABA®) Qualified Autism Services Practitioner Supervisor (QASP-S®) Certification standards and requirements. After hearing the report, the advisory board did not recommend accepting the QASP-S® credential for an assistant behavior analyst license to the Texas Department of Licensing and Regulation (TDLR or the Department). On February 26, 2021, the advisory board met and assigned the Licensing Workgroup to review the Qualified Applied Behavior Analysis Credentialing Board's (QABA®) Qualified Behavior Analyst (QBA®) certification to make a recommendation to the advisory board about QABA® as a certifying entity for behavior analysts and about QBA® certification qualifying as a requirement for a behavior analyst license. Also assigned to the Licensing Workgroup was review of the Behavior Intervention Certification Council (BICC) Board Certified Autism Professional (BCAP) credential to make a recommendation to the advisory board about BICC as a certifying entity for behavior analysts and about BCAP certification qualifying as a requirement for a behavior analyst license.

The Department has determined that the Qualified Autism Services Provider-Supervisor® (QASP-S®) credential, issued by the Qualified Applied Behavior Analysis Credentialing Board® (QABA®), does not qualify a person to meet the statutory requirements for licensure as an Assistant Behavior Analyst in Texas.

First, Texas Occupations Code (TOC), Ch. 506, relating to Behavior Analysts, defines "certifying entity" as the nationally accredited Behavior Analyst Certification Board® (BACB®) or another entity that is accredited by the National Commission for Certifying Agencies (NCCA) or the American National Standards Institute (ANSI) to issue credentials in the professional practice of applied behavior analysis and approved by the department. The QASP-S credential, issued by QABA®, is accredited by ANSI to provide a certification as a qualified autism service practitioner, not to issue a credential in the professional practice of applied behavior analysis, so it may not be approved as a certification for the Assistant Behavior Analyst license.

Second, the statute further defines a Licensed Assistant Behavior Analyst as a person who is certified by the certifying entity as a Board Certified Assistant Behavior Analyst® (BCaBA®) or who has an equivalent certification issued by the certifying entity and who meets the requirements specified by §506.254, Requirements for Licensed Assistant Behavior Analyst. Sec. 506.254, requires an applicant to meet the educational requirements of the BCaBA® standard or an equivalent standard adopted by the certifying entity. After review by advisory board members, the Executive Director, and Department staff, it was agreed that the educational requirements needed for QASP-S® certification are not equivalent to the educational requirements needed for an assistant behavior analyst license.

EXHIBIT F

Mr. Michael Moates, M.A., CAP, NP, QMHP-R/T, RBT
December 9, 2021
Page 2

The BACB® requirements include a bachelor's degree from an Association for Behavior Analysis International (ABIA)-Accredited Undergraduate Program or the completion of a Verified Course Sequence through an accredited university, to which the educational requirements for the QASP-S® credential are not equivalent.

Currently, the BACB® is the only certifying entity approved by the department under TOC §506.002(2), which states that a certifying entity must be the nationally accredited Behavior Analyst Certification Board or another entity that is accredited by the National Commission for Certifying Agencies or the American National Standards Institute to issue credentials in the professional practice of applied behavior analysis. In addition to being NCCA or ANSI accredited to issue credentials in the professional practice of applied behavior analysis, the entity must also be approved by the department. Approval from the department is based on several factors, including education and experience standards, and is not based solely on NCCA or ANSI accreditation. As mentioned earlier, the Licensing Workgroup will be reviewing the QBA® credential and the Behavior Intervention Certification Council (BICC) Board Certified Autism Professional (BCAP) credential and will give their report during an advisory board meeting.

BACB® is the only approved certifying entity at this time. TDLR does not set supervision requirements for licensed assistant behavior analysts and licensed behavior analysts but licensees are required to comply with the BACB® Professional and Ethical Compliance Code for Behavior Analysts, which establishes supervision requirements (see Texas Administrative Code §121.75(a)).

Membership on the Behavior Analysts Advisory Board is determined by statute, TOC Ch. 506 Subchapter C, and includes four licensed behavior analysts, at least one of whom must be certified as a Board-Certified Behavior Analyst--Doctoral or hold an equivalent certification issued by the certifying entity, one licensed assistant behavior analyst, and one physician who has experience providing mental health or behavioral health services. Dr. Joyce Mauk is a licensed physician who specializes in pediatrics - neurodevelopmental disabilities and has extensive experience, including her role as Director of the Behavioral Rehabilitation Service Line at Children's Seashore House, a hospital serving children with developmental disabilities and chronic illnesses in Philadelphia, Pennsylvania.

TOC §506.256 allows TDLR to issue a reciprocal license to a person who is currently licensed as a behavior analyst or as an assistant behavior analyst from another state or jurisdiction that imposes licensure requirements similar to those specified in the chapter, which includes being in good standing as determined by the department, holding a valid license from another state or jurisdiction, and being in compliance with other requirements established by Sections 506.252, 506.253, 506.254, or 506.255, as appropriate. TDLR will issue reciprocal licenses to individuals who meet all of the requirements.

The date of the next Behavior Analysts Advisory Board meeting has not been set. You will find meeting agendas on the Behavior Analysts Advisory Board webpage. The deadline to submit a public comment will be stated on the advisory board meeting agenda, but it is normally noon the day before the meeting. If the meeting is on a Monday, then noon the Friday before. If you wish to submit a public comment, you may do so in writing or by addressing the Board, or both.  Written comments must be

Mr. Michael Moates, M.A., CAP, NP, QMHP-R/T, RBT
December 9, 2021
Page 3

submitted to Board.Comments@tdlr.texas.gov. Comments will be provided to the Board members for their review before the meeting but will not be read publicly during the public meeting. If you wish to address the Board during the public meeting, please provide your contact information to Board.Comments@tdlr.texas.gov. During the meeting, you will receive an email with a link to join the meeting. Commenters are generally allowed up to three (3) minutes to speak. However, the Presiding Officer may reduce the time provided for public comments based on the number of requests received. Ensure that you have a reliable connection and clear audio.

Email requests for Public Comment must include:
• Agenda Item or Specific Topic
• Name
• Telephone number
• Please indicate whom you are representing. Ex: attorney, yourself or other

Failure to provide the information requested directly above could result in your comment being delayed or taken out of order.

Any additional information you previously requested, and which is applicable to open records, is being processed by our Open Records Department under the applicable law and deadlines, and you will receive those documents from that section.

If you have additional questions, please contact Katie Brice, Senior Health Professions Programs Specialist, via email at katie.brice@tdlr.texas.gov.

Sincerely,

*Heather Muehr (signature)*

Heather Muehr
Manager, Medical and Health Professions Section
Regulatory Program Management
Texas Department of Licensing and Regulation



# QBA and BCBA

| QBA | BCBA |
|---|---|
| Have a graduate degree | Have a graduate degree |
| Behavior-Analytic Coursework | Behavior-Analytic Coursework |
| Agree to Code of Ethics | Agree to Code of Ethics |
| Pass a background check | Pass a background check |
| Complete 270 hours of Behavior-Analytic Coursework | Complete 270 hours of Behavior-Analytic Coursework |
| 5% Supervised Fieldwork | 5% Supervised Fieldwork |
| Pass Nationally Accredited Competency Exam | Pass Nationally Accredited Competency Exam |
| Maintenance: Complete 32 CEUs (minimum for Ethics) | Maintenance: Complete 32 CEUs (minimum for Ethics) |
| Complete 270 hours of Behavior-Analytic Coursework<br>• Legal, Ethical, and Professional Considerations<br>• Core Principles of ABA<br>• Data Collection and Analysis<br>• Assessment<br>• Antecedent Interventions<br>• Behavior reduction Interventions<br>• Training and Supervision<br>• Skill Acquisitions and Programming | Complete 270 hours of Behavior-Analytic Coursework<br>• Ethical and Professional Conduct<br>• Concepts and Principles of Behavior Analysis<br>• Measurement (including data analysis)<br>• Experimental Design<br>• Identification for the Problem and Assessment<br>• Fundamental Elements/Procedures of Behavior Change<br>• Intervention and Behavior-Change Considerations |



| | <ul><li>Behavior-Change Systems</li><li>Implementation, Management, and Supervision</li><li>Discretionary Behavior-Analytic Content</li></ul> |
|---|---|

# EXHIBIT H

**Elizabeth Salinas-Strittmatter** <Elizabeth.Salinas-Strittmatter@tdlr.texas.gov>

to me, Skila, Laani, Susan, Ika

Good Afternoon Mr. Mosen,

As I previously stated, TDLR is not engaging in any further conversations about the issue in controversy. The Department will communicate with you as necessary via agency counsel, by and through the Office of the Attorney General, after it has been served and filed its Answer.

Please inform the Constable or Process Server, that due to COVID TDLR offices are closed. Given the circumstances, TDLR will agree to accept service via e-mail directed to me. Please have the Constable or Process Server contact me at this e-mail address with any questions or concerns.

Regards,

Elizabeth Salinas-Strittmatter
Assistant General Counsel
Texas Department of Licensing and Regulation

Tue, Feb 8, 2:30 PM

JS 44 (Rev. 10/20) - TXND (10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Michael Moates

**(b)** County of Residence of First Listed Plaintiff    Denton
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Pro Se

## DEFENDANTS

TX Dept. of Licensing and Regulation, Michael Arismendez, as Executive Director, and the Behavior Analyst Certification Board

County of Residence of First Listed Defendant    Travis
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

Elizabeth Salinas-Strittmatter, Assistant General Counsel

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | **PERSONAL INJURY** | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loan (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 370 Other Fraud | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 865 RSI (405(g)) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Constitution of the United States of America - 42 U.S. Code § 1983 - Civil action for deprivation of rights
Brief description of cause:
Violation of various state and federal laws

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE   4 - April - 2022

SIGNATURE OF ATTORNEY OF RECORD    PRO SE

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____





ORIGIN ID:DWA
MICHAEL BOATES
2700 COLORADO BOULEVARD #A106
DENTON TX 76210
UNITED STATES

(817) 389-7504

SHIP DATE: 04APR22
ACTWGT:
CAD: 000000000/INET4602

BILL CREDIT CARD

TO UNITED STATES DISTRICT COURT
501 WEST 10TH STREET, ROOM 310

FORT WORTH TX 76102

7764 7795 4180

4Z QFWLQ

THU – 07 APR 4:30P
EXPRESS SAVER

76102
DFW

TX-US



Envelope